IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | | |
|---|---|---|
| **BASIL AL-ASBAHI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:15-CV-144 (Keeley) |
| | ) | Electronically filed: 08/24/2015 |
| **THE WEST VIRGINIA UNIVERSITY** | ) | JURY TRIAL DEMANDED |
| **BOARD OF GOVERNORS;** | ) | |
| **THE WEST VIRGINIA UNIVERSITY** | ) | |
| **SCHOOL OF PHARMACY;** | ) | |
| **DR. ELIZABETH SCHARMAN**, in her | ) | |
| official and individual capacities; **DR.** | ) | |
| **TERRENCE L. SCHWINGHAMMER**, | ) | |
| in his official and individual capacities; | ) | |
| **DR. JAY L. MARTELLO**, in his official | ) | |
| and individual capacities; **DR. PATRICIA** | ) | |
| **CHASE**, in her official and individual | ) | |
| capacities; **DR. LENA MAYNOR**, in her | ) | |
| official and individual capacities; | ) | |
| **DR. MARY EULER**, in her official and | ) | |
| individual capacities; | ) | |
| **DR. CHRISTOPHER C. COLENDA**, | ) | |
| in his official and individual capacities; | ) | |
| and, **DR. CHADRICK LOWTHER**, in | ) | |
| his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Basil Al-Asbahi (hereinafter "Al-Asbahi" and/or "Plaintiff"), through his

undersigned attorneys, files this Complaint seeking compensatory and punitive damages and

declaratory and injunctive relief for violations of his procedural and substantive due process

rights under the United States Constitution, his civil rights against invidious discrimination

protected by federal statute, and for breach of contract and promissory estoppel, and avers as follows:

## SUBJECT MATTER JURISDICTION

1.      This Court possesses subject matter over the claims alleged in the Complaint under 28 U.S. C. §1331 because they arise under the Constitution and federal statutes, 42 U.S.C. 1981, §1983, and 1985(3), and are otherwise so related to the federal claims as to form part of the same case or controversy under Article III of the Constitution sufficient to satisfy supplemental jurisdiction pursuant to 28 U.S.C. §1367.

## PERSONAL JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over Defendants because they all reside in this District or their services or acts or omissions that gave rise to Plaintiff's claims occurred in this District making them subject to West Virginia's long-arm statute, W.Va. Code §56-3-33 (2014).

3.      Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants reside in the District or the acts or omissions that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff Basil Al-Asbahi is of Arab descent, a practitioner of Islam and a resident of West Virginia.  He is a graduate of Marshall University in Huntington, West Virginia.  Plaintiff was admitted to the Doctors of Pharmacy Program (Program) of the West Virginia University School of Pharmacy (SOP) in 2009.   A tiny number of persons of Arab descent or Muslims are enrolled in the Program.

5.      Defendant SOP celebrated its centennial in 2014.  It offers a Doctor of Pharmacy Degree Program.  SOP's address is School of Pharmacy, Robert C. Byrd Health Sciences Center, West

Virginia University, P.O. Box 9500, Morgantown, WV 26506-9500.  On information and belief,

the SOP has no Muslims or persons of Arab descent on its teaching or administrative staff.

6.      Defendant West Virginia University Board of Governors is the governing body for the

SOP.

7.      Defendant Dr. Elizabeth Scharman, Pharm D., was Chair of the Academic and

Professional Committee of the SOP during all times relevant to this Complaint.  Dr. Scharman

resides in West Virginia and has an office at 3110 MacCorkle Ave SE, Charleston, WV 25304.

8.      Defendant Terrence L. Schwinghammer, Pharm D, is Professor and Chair of the

Department of Clinical Pharmacy at SOP.  Defendant Schwinghammer is a resident of

Pennsylvania, and has an office at Department of Clinical Pharmacy, 1124 Health Sciences North,

P.O. Box 9520, Morgantown, West Virginia 26506.

9.      Defendant Dr. John Martello is a Clinical Assistant Professor and Clinical Specialist in

Internal Medicine at the SOP and WVU Healthcare.  Defendant Dr. Martello resides in

Pennsylvania, and has an office at PO Box 9520, Department of Clinical Pharmacy, School of

Pharmacy, 1st Floor HSCN Rm 1124, Morgantown, West Virginia 26506.

10.      Defendant Dr. Patricia A. Chase was Dean of the SOP during all times relevant to this

Complaint.  Defendant Chase held power to influence Defendant Martello's professional career

and decisions at all times relevant to this Complaint.  Defendant Chase denied Plaintiff's appeal

from the wrongful and discriminatory actions of Defendant Martello through an irregular

procedure that bypassed the Committee on Academic and Professional Integrity in violation of

Defendants' "Policy on Academic and Professional Standards Governing the Doctor of

Pharmacy Degree Program."  Defendant Chase resides in West Virginia, and resigned as Dean

effective August 1, 2015.

11.     Defendant Dr. Lena M. Maynor is Clinical Associate Professor and Director of Advanced Pharmacy Practice Experiences.  She resides in West Virginia, and has an office address at P.O. Box 9520, Department of Clinical Pharmacy, 1st Floor HSCN, Room 1124, Morgantown, West Virginia 26506.  Defendant Maynor, among other things, influenced Defendant Martello to fail Plaintiff in his Summer 2014 Acute Care Rotation as part of a conspiracy with co-Defendants to, among other things, retaliate against Plaintiff for a prior successful appeal of a dispute with Defendant Dr. Chadrick Lowther and because of Plaintiff's religion and Arab descent.

12.     Defendant Mary L. Euler is Associate Dean for Student Services at the SOP.  She resides in West Virginia, and has an office at P.O. Box 9500, 1122B HSN, Morgantown, West Virginia 26506.  Defendant Euler, among other things, influenced Defendant Martello to fail Plaintiff in his Summer 2014 Acute Care Rotation as part of a conspiracy with co-Defendants to retaliate against Plaintiff for a prior successful appeal of a dispute with Defendant Lowther and because of Plaintiff's religion and Arab descent.

13.     Defendant Christopher C. Colenda is Chancellor for Health Sciences at WVU, and President-elect of the entire West Virginia University enterprise.  He resides in West Virginia, and has an office at P.O. Box 8010, 1000 Technology Drive, Suite 2320, Fairmont, West Virginia 26554.  Defendant Colenda affirmed Defendant Chase's dismissal of Plaintiff from the Program for failing Defendant Martello's Summer 2014 Acute Care Rotation.

14.     Defendant Dr. Chadrick G. Lowther is a cardiology clinical specialist at Charleston Area Medical Center (CAMC) Memorial Hospital.  He resides in West Virginia and has an office at 3200 Maccorkle Ave SE, Charleston, WV 25304.  Defendant Lowther harassed, antagonized and sadistically abused and discriminated against Plaintiff and ultimately failed Plaintiff in his Acute Care Rotation in Critical Care, a decision that was repudiated and reversed by Fred R. Butcher,

the SOP Vice President for Planning and Operations.  Defendant Lowther, among other things, influenced Defendant Martello to subsequently fail Plaintiff in his Acute Care Rotation as part of a conspiracy with co-Defendants to retaliate against Plaintiff because of Plaintiff's religion and Arab descent and because Plaintiff Al-Asbahi successfully appealed his dispute with Defendant Lowther to Dr. Butcher.

## INTRODUCTION

15.    Plaintiff was dismissed from the SOP in his fourth and final year on August 1, 2014 because of a decision motivated by racial, ethnic and religious-based animus and retaliation to fail him from an Acute Care Rotation curriculum with Defendant Dr. Jay Martello.  Plaintiff has been denied an opportunity to appeal the decision to the Committee on Academic and Professional Integrity as stipulated in Chapter 1, Section 6.2 of the SOP "Policy on Academic and Professional Standards Governing the Doctor of Pharmacy Degree Program." )(hereinafter "Policy"), thereby giving rise to this action seeking redress for the violations of his substantive and procedural due process, federal civil rights statutes, breach of contract and promissory estoppel , as set forth more fully below.

## FACTS

16.    Plaintiff is a graduate of Marshall University in Huntington, West Virginia.  Plaintiff was admitted to the SOP Program on August 24, 2009.  Plaintiff commenced his fourth and final year of the Program on May 27, 2013, with an overall grade point average of 2.76, which places him in the top fifty percent (50%) of his class and translates into a B- according to the SOP's grade scale.  There are approximately 80 new Program students annually.  Plaintiff is a Muslim of Syrian descent.  Upon information and belief, the number of Muslims or students of Arab or Middle Eastern descent presently enrolled in the entire Program is very tiny, being approximately

2-3 per class. Upon information and belief, the current enrollment demographics are not a statistical or historical aberration as regards SOP students of Muslim belief and Arab or Middle Eastern ethnicity.

17.     Tuition for the Program approximates $15,000.00 annually, or $60,000 in total to obtain a Doctor's Degree.

18.     Program graduates can earn up to $150,000 annually.

19.     The Policy was part of the contractual arrangement between the Defendant SOP, Defendant Board of Governors, and Plaintiff establishing the terms and conditions for Plaintiff's enrollment in the Program upon which he reasonably relied.

20.     A dismissal of a student from the Program in the final year virtually never happens. Defendants have a pecuniary interest in graduating all students from the Program in the expectation that they will later donate to Defendants' endowment or otherwise.

21.     Plaintiff was a solid student and made satisfactory progress in his academic and clinical studies, receiving satisfactory grades after an early stumble.  Plaintiff began his fourth and final year in the Program making satisfactory progress toward his PharmD degree with a respectable and better-than-average 2.76 overall grade point average.

22.     Contemporaneous with Plaintiff's commencement of his fourth year in the Program, Defendant Scharman arbitrarily and capriciously substantially because of Plaintiff's religion and Arab descent subjected Plaintiff to a remediation plan.  It included taking two courses that Plaintiff had already passed (Pharmacotherapeutics IV and Pharmacokinetics).  After Plaintiff protested, the remediation plan was scaled back by Defendants Chase and Euler to retaking only Pharmacokinetics.  Plaintiff did so and scored highly on all the exams.

23.     Plaintiff then commenced a rotation at the Charleston Area Medical Center (CAMC) with Defendant Lowther.  Defendant Lowther was notorious among students and faculty alike for his vindictiveness, prejudices, irritability, and narrow-mindedness.

24.     During the first rotation day, Defendant Lowther instructed Plaintiff that Plaintiff Al-Asbahi would receive a failing grade if he either circumvented Defendant Lowther's authority by making recommendations to nurses or physicians concerning patients, or displayed lackadaisical effort.  Plaintiff did neither.  Indeed, Plaintiff logged and documented more than 200 hours of work in less than 2.5 weeks with Defendant Lowther, exhibiting a work ethic double of the required 200 hours over a five (5) week period.

25.     During the first rotation week, Defendant Lowther brusquely and publicly scolded Plaintiff for requesting a short dispensation to pray at a local mosque.  In contrast, Defendant Lowther routinely granted corresponding religious dispensations for Christians and Jews.

26.     On October 2, 2013, Plaintiff received a call from Defendant Lowther informing Plaintiff of a need to immediately contact via pager Dr. Brian Hodges, Assistant Professor of Clinical Pharmacy and site director at CMAC. Dr. Hodges told Plaintiff that he was pulling him off the Lowther rotation to avoid a failing grade.

27.     Pursuant to Dr. Hodges' instruction, Plaintiff communicated with Defendant Maynor, who emailed Plaintiff as follows:

> "The amount of time and effort currently required to provide adequate supervision and education related to your knowledge deficiencies is preventing your current preceptor [Lowther] from conducting his responsibilities to CAMC.  It has been requested that you be immediately removed from your current rotation.  You are not to go back to the site after today.  There will be more information forthcoming from me tomorrow after I have had the opportunity to confer with Dean Chase and Dr. Euler."

28.     Dr. Maynor then informed Plaintiff via email that he had failed Defendant Lowther's rotation because of his removal, which contradicted the statement of Dr. Hodges that Plaintiff was removed from the rotation to *avoid* a failing grade.

29.     Plaintiff's failing grade with Dr. Lowther was based upon racial, religious and ethnic/cultural animus because of Al-Asbahi's Muslim religion and Arab/Middle Eastern descent.

30.     On October 7, 2013, Plaintiff was informed by Defendant Chase that he was dismissed from the Program because of the failing grade with Defendant Lowther.

31.     On October 15, 2013, Plaintiff appealed the grade and dismissal to Dr. Fred R. Butcher, Vice President of Health Sciences.

32.     Vice President Butcher sustained Plaintiff's appeal in a letter to Plaintiff dated November 13, 2013, which found five (5) deficiencies in the actions of Defendants Lowther, Chase, and Maynor.

33.     The Vice President initially explained that his role was "to assure that due process was given to the student, assure that the review was comprehensive and unbiased, and to determine if the decision reached is supported by the record of the student."

34.     According to Dr. Butcher, Defendants' error number 1 was removing Plaintiff from a rotation for a reason not specified in the Policy, Chapter 4, Section 4.2, i.e., "undue amount of time and effort" required of the preceptor that professedly interfered with other job responsibilities.

35.     Defendants' error number 2 was violating the Policy, Chapter 4, Section 4.4 by obscuring the reason for giving Plaintiff a grade of "F" rather than "I" because of his removal from the Lowther rotation.

36.     Defendants' error number 3 was the contradiction in Defendant Chase's explanation for Plaintiff's dismissal from the Program (failure to meet required competencies) and the reason stated by Dr. Hodges (undue amount of time and effort required of preceptor).

37.     Defendants' error number 4 was a violation of the Policy, Chapter 4, Section 4.3, setting forth the lines of communication and lines of authority regarding the quality of the student's performance on rotation as well as removal from rotation.  Section 4.3 elaborates that any problems encountered during a rotation should be handled by the parties involved and, if these efforts fail, the Director of Experiential Programs and the student's advisor should be notified. Defendants did not follow either process.

38.     Defendants' error number 5 was that the rotation preceptor [Defendant Lowther] provided contemporaneous notes of his daily interactions with Plaintiff indicating Plaintiff's struggle to meet expectations.  But Plaintiff was not provided direct written evaluations with delineated performance improvement expectations.

39.     The Vice President concluded:  "Based on my review and determination of the issues and policy discrepancies outlined above, I am making the following rulings:  a) Your dismissal from the Pharm.D. degree program is reversed; and b) The grade for your rotation is changed from an "F" to an "I." An "I" grade indicates "Incomplete".

40.     Defendants were furious at Plaintiff and Dr. Butcher.  They then and there formed a conspiracy to find an excuse to dismiss Plaintiff from the Program that did not reflect genuine professional or academic judgment, and that was motivated in substantial part by racial animus and animosity towards Plaintiff's religion, Islam, and Arab/Middle Eastern descent.  The conspiracy ultimately found expression in Defendant Martello's giving Plaintiff a failing grade in his Summer 2014 Acute Care Rotation for contrived, counterfactual reasons.  The failing grade

triggered Plaintiff's dismissal from the Program.  Defendants denied Plaintiff's contractual right to appeal Defendant Martello's failing grade to the Committee for a hearing as authorized by Chapter 1, Section 6.2 of the Policy, and violated other Policy promises or stipulations.

41.     Defendants ignored or sneered at Plaintiff's requests for a Committee hearing to resolve his grade dispute and dismissal made on May 28, 2015, and July 20, 2015, respectfully.   Plaintiff has been forced by Defendants' intransigence to seek redress in this Honorable Court.

42.     Defendants fumed over their embarrassments from Dr. Butcher's ruling in favor of Plaintiff. Their self-esteem and self-identify pivot in substantial part on asserting absolute power over SOP students.  Defendants conspired to concoct a pretext to dismiss Plaintiff from the Program to avenge their humiliation and their animosity towards Plaintiff's religion and Arab descent.

43.     One manifestation of the conspiracy was a November 20, 2013 letter Defendant Dean Chase sent to Plaintiff.  Without justification, it prohibited Plaintiff from rotations except with WVU faculty members, including any CAMC rotations.  Those limitations would delay Plaintiff's graduation from May until December 2014, and were in retaliation for Plaintiff's successful appeal of his failing grade to Dr. Butcher and because of his race, religion and Arab/Middle Eastern descent.

44.     Another manifestation of the conspiracy was Defendants' giving Plaintiff a failing grade in Elective Rotation 2 during his dismissal prior to reinstatement in the Program by Dr. Butcher despite knowing Plaintiff was prohibited from attending the rotation because of Defendants' dismissal decision.

45.     Defendants also denied Plaintiff the opportunity offered all other students to rank preceptors in order of preference he desired for classes or rotations.  Defendants' denial was

motivated in substantial part because of Plaintiff's religion and Arab descent, and because of his successful appeal of Defendant Lowther's failing grade to Dr. Butcher.

46.     When Plaintiff raised these issues in a December 2, 2013, letter to Defendant Chase, a meeting was scheduled with Plaintiff and Defendant Euler.  There, Chase and Euler voiced disagreement with Vice President Butcher's ruling, and humiliated Plaintiff by forcing him to read out loud scathing criticisms of his performance from Defendant Lowther's notes reminiscent of "struggle sessions" employed by Communist China during the Mao Zedong era to humiliate class enemies.

47.     Upon reinstatement in the Program, Plaintiff passed a rotation with Dr. Jonathan Kline in Harper's Ferry with strong marks.

48.     Plaintiff next enrolled in Defendant Martello's Summer 2014 Acute Care Rotation.

49.     In the early innings of the rotation, Defendant Martello faulted Plaintiff for a "knowledge deficiency."  Defendant then retracted the criticism by confessing it was too early to tell.

50.     Defendant Martello routinely copied SOP faculty members with negative email evaluations of Plaintiff's performance—indicative of both the pervasive racial animus and discriminatory intent as regards Plaintiff Al-Asbahi's religion and Arab/Middle Eastern ethnicity and of the conspiracy to concoct a reason for a failing grade and to dismiss Plaintiff from the Program.  Defendant Martello did not routinely copy other faculty members with negative email evaluations of other students.

51.     Defendant Martello invented criticisms of Plaintiff's performance or held Plaintiff to a higher standard than other non-Muslim, non-Arab students with regard to, among other things, healthcare screenings, equipment use, drug information, patient discussions, and patient interventions.

52.     Defendant Martello's participation in the effort and scheme to fail Plaintiff did not reflect Defendant Martello's genuine professional or academic judgment, but was motivated by wrongful and discriminatory animus and intent to retaliate against Plaintiff because of his prior successful appeal of a dispute with Defendant Lowther and because of Plaintiff's religion and Arab descent.

53.     Plaintiff confronted Defendant Martello with his unjustified criticisms. Martello largely conceded Plaintiff's points, and emailed Plaintiff:  "I was happy to take the time to meet with you today.  As I mentioned, I have seen good improvement today compared to last week.  Please continue to keep doing what you did today for the remainder of the rotation, being interactive, and 'going deeper' when looking up information."

54.     On July 16, 2014, Plaintiff inadvertently was absent from a session in Defendant Martello's rotation concerning clinical conference and formulary at the Ruby Pharmacy Conference Room. Plaintiff's absence was caused by his confusion over the meeting place.

55.     On the same day, Plaintiff Al-Asbahi sent a text message to  Defendant Martello, as follows:  "This is Basil.  About clinical conference today.  I had discussed it with Eric [a fellow student] before and he inadvertently told me conference was at 12:30 in the same room noon conference is held.  When the subject matter at noon conference did not change I went to the correct place only to see the door closed and thought if anything was occurring it was a closed session.  I would not jeopardize my rotation by intentionally missing a conference and am sorry for my error."  Defendant Martello routinely informed "Eric" of schedule changes, although that critical information was generally withheld from Plaintiff Al-Asbahi.

56.      Defendant Martello responded by email to Plaintiff copied to co-Defendants:  "I appreciate your getting back to me and explaining the situation regarding today and missing the

meetings (clinical conference and formulary).   I recognize that there was some confusion, and understand that errors like this do happen—having said that, the schedule I sent at the start of the rotation did state where the meetings today take place…In addition, you still missed formulary, and I don't think you stopped by and saw a door shut as you stated today, because we started late (at 1:40 pm), and didn't shut the door until then, so either you did not make it over to formulary at all, or were late to the meeting.  I checked with a few other people to see where you were, and they generally confirmed this as well.  Attendance at meetings listed on the schedule, unless otherwise noted, is mandatory for successful completion of the rotation and passing of the professionalism competencies.  Please let me know if there are any further questions, or if you need me to clarify anything."

57.    Contrary to Defendant Martello, he did not contact people with knowledge of Plaintiff's whereabouts on July 16, 2014.  Defendant Martello fabricated the tale as part of the conspiracy with co-Defendants to invent a pretext for failing Plaintiff and dismissing him from the Program because of his successful appeal of a failing grade and dismissal to Dr. Butcher and because of his religion and Arab descent.

58.    Defendant Martello's email did not state that Plaintiff's inadvertent absence would mean a failing grade and dismissal from the Program.

59.    Plaintiff responded to Defendant Martello's email with another apology for the absence. Plaintiff requested Defendant Martello to alert him if he should no longer participate in his rotation.  Defendant Martello responded to the effect that Plaintiff should not worry about the July 16, 2014 absence and that they were moving on.  He did not instruct Plaintiff to cease attending his rotation.

60.     Defendant Martello's final evaluation of Plaintiff on August 1, 2014 was an "F" in the competency of professionalism because of the inadvertent absence from the meeting session on July 16, 2014. The latter reason was especially stunning to Plaintiff because Defendant had previously told him not to worry about it.

61.     Defendant Martello, for ulterior motives and in conspiracy with the co-Defendants, failed Plaintiff in his Summer 2014 Acute Care Rotation on August 1, 2014.  This wrongful, illegal and discriminatory act occasioned Plaintiff's dismissal from the Program pursuant to a final decision by the Chancellor for Health Sciences, Defendant Dr. Christopher C. Colenda.

62.     On information and belief, Martello had conspired with his co-Defendants to give Plaintiff a failing grade for ulterior motives that did not reflect genuine professional or academic judgment.  The genuine motives were because of Plaintiff's successful appeal of a failing grade and dismissal to Dr. Butcher and because of racial animus and discrimination based upon Plaintiff's religion, Islam, and Arab/Middle Eastern descent.

63.     Plaintiff promptly visited the offices of Defendant Maynor to discuss his appeal options. As the visit began, Defendant Maynor telephoned Defendant Martello. After a short discussion, Defendant Maynor informed Plaintiff that he would be failing another competency—collecting patient data.

64.     Defendant Martello informed Plaintiff that an appeal should be directed to Defendant Schwinghammer.

65.     Plaintiff scheduled an appeal appointment for August 6, 2014.  Defendant Schwinghammer informed Plaintiff that if he was unable to resolve the dispute, a written appeal should be directed to the Committee within 30 days.  But Defendant Schwinghammer soon

retracted that guidance, and informed Plaintiff that should he be unable to resolve the grade

dispute, the matter would go directly to Defendant Chase and bypass the Committee.

66.     Plaintiff had no opportunity to confront Defendant Martello, who was absent from the

meeting with Defendant Schwinghammer.  The latter stated he had previously spoken with

Defendant Martello and had decided to uphold Plaintiff's failing grade.

67.     On August 14, 2014, Defendant Chase emailed Plaintiff with an attached letter.  It stated

that Plaintiff was dismissed from the Program for failing Defendant Martello's rotation.  Plaintiff

was instructed that he had 30 days to appeal Defendant Chase's decision to Defendant Colenda,

Chancellor of Health Sciences.

68.     On September 4, 2014, Plaintiff sent a letter to Defendant Colenda appealing his failing

grade and dismissal, but Plaintiff did not seek continued enrollment in the Program because of

the hostile or venomous SOP environment.

69.     Defendant Colenda responded to Plaintiff's appeal letter on September 30, 2014, which

obtusely imputed to Plaintiff a decision not to appeal his failing grade and dismissal from the

Program.  In any event, Defendant Colenda wrote:  "[Y]ou request your summer 2014 Acute

Care Rotation grade be changed to a "P."  As you are aware, you failed this rotation and the

grade was upheld on appeal.  Accordingly, your grade cannot be changed."

70.     On May 28, 2015, Plaintiff by letter requested an appeal of the 2014 Acute Care Failing

Grade to the Committee under Chapter 1, Section 6.2 of the Policy.  Plaintiff reiterated the

request on a July 20, 2015 letter to Defendants.  Both letters have been largely ignored by

Defendants, and no hearing before the Committee has been permitted.

## COUNT I - VIOLATION OF SUBSTANTIVE DUE PROCESS

71.     Plaintiff repeats and re-alleges paragraphs 1-68, above, and incorporates the same as if fully set forth herein.

72.     The actions of Defendants alleged in paragraphs 1-68 were taken under color of state law.

73.     Plaintiff Al-Asbahi possessed a property or liberty interest in completing and graduating from the Program protected by the due process clause of the Fourteenth Amendment.

74.     Defendants conspired to fail Plaintiff from the Program in general and from Defendant Martello's 2014 Acute Care Rotation in particular and worked together in unlawful concert to dismiss Plaintiff from the Program to avenge their humiliation at Plaintiff's successful appeal of Defendant Lowther's failing grade to Vice President Butcher and because of his race, religion and Arab/Middle Eastern ethnicity and descent.  In so doing, Defendants were motivated by malice towards Plaintiff Al-Asbahi.

75.     Plaintiff's dismissal from the Program did not reflect genuine professional or academic judgments of Defendants.  If Defendants had exercised their genuine individual and collective professional judgments free from racial, religious or ethnic bias, Plaintiff would not have been dismissed from the Program.

76.     Defendants' conspiracy and other acts that resulted in Plaintiff Al-Asbahi's unlawful and unjustified dismissal from the Program violated, *inter alia,* Plaintiff's substantive due process rights under the Fourteenth Amendment and 42 U.S.C. 1983.

77.     Plaintiff Al-Asbahi has suffered damages proximately caused by Defendants' violation of his substantive due process rights in the form of lost compensation, tuition expense, injury to professional reputation, mental and emotional suffering and dismissal from the Program.

**COUNT II - VIOLATION OF PROCEDURAL DUE PROCESS**

78.     Plaintiff Al-Asbahi repeats and re-alleges paragraphs 1-75, above, and incorporates the same as if fully set forth herein.

79.     The actions of Defendants alleged in paragraphs 1-75 were taken under color of state law.

80.     Plaintiff Al-Asbahi possessed a property or liberty interest in completing and graduating from the Program protected by the due process clause of the Fourteenth Amendment.

81.     Defendants singly and collectively deprived Plaintiff of his clearly established procedural due process rights in violation of the Fourteenth Amendment and 42 U.S.C. 1983 of which a reasonable person would have known in  failing Plaintiff from Defendant Martello's Acute Care Rotation and unlawfully dismissing Plaintiff from the Program without fair notice or fair opportunity to respond.   Plaintiff was denied an opportunity to confront Defendant Martello or to fairly defend his academic performance against Defendant Martello's concocted disparagements.  If Plaintiff Al-Asbahi had received due process, Plaintiff would have successfully appealed his dismissal from the Program.

82.     Defendants' violation of Plaintiff Al-Asbahi's clearly established procedural due process rights proximately caused Plaintiff to fail Defendant Martello's Acute Care Rotation and to be dismissed from the Program and thus to suffer damages in the form of lost compensation, tuition expense, injury to professional reputation, mental and emotional damages, or otherwise in an amount to be determined at trial.

## COUNT III - VIOLATION OF CIVIL RIGHTS, 42 U.S.C. 1981

83.     Plaintiff Al-Asbahi repeats and re-alleges paragraphs 1-80, above, and incorporates same as if fully set forth herein.

84.     Plaintiff Al-Asbahi is a member of a racial or ethnic minority.

85.     Each and all of the Defendants intended to discriminate against Plaintiff Al-Asbahi on the basis of his race and/or ethnicity.

86.     Defendants intentionally discriminated against Plaintiff Al-Asbahi and he was denied the benefits and performance of the contractual terms with Defendants as stipulated in the Policy based upon racial animus because of Plaintiff Al-Asbahi's race and his Arab/Middle Eastern ethnicity and descent, including but not limited to, Chapter 1, Sections 1-6, and Section 4 of the contract and Policy in violation of 42 U.S.C. 1981.  Defendants acted with malicious, subjective and purposeful intent and racially discriminatory animus and intent.

87.     Plaintiff Al-Asbahi has been damaged by Defendants' violation in the form of lost compensation, tuition expense, injury to professional reputation, mental and emotional pain and suffering, and otherwise in an amount to be determined at trial.

## COUNT IV - VIOLATION OF CIVIL RIGHTS, 42 U.S.C. 1985(3)

88.     Plaintiff Al-Asbahi repeats and re-alleges paragraphs 1-85 above, and incorporates same as fully set forth herein.

89.     Defendants Scharman, Schwinghammer, Martello, Chase, Maynor, Euler, Colenda and Lowther (hereinafter jointly and individually the "Individual Defendants") individually and jointly with racial animus  and malice conspired for the purpose of depriving Plaintiff Al-Asbahi directly or indirectly of the equal protection of the laws, including but not limited to the due process clause of the Fourteenth Amendment and contract laws, because of Plaintiff Al-Asbahi's religion, Islam and/or his Arab/Middle Eastern ethnicity, culture or descent in the various acts set forth above and as shall be proved at the trial of this cause, all for the purposes of dismissing Plaintiff from the Program in violation of 42 U.S.C. 1985(3).

90.     Each Individual Defendant acted and conspired with at least one other co-conspirator(s) to commit an act or acts in furtherance of the conspiracy to deprive Plaintiff Al-Asbahi directly or indirectly of the equal protection of the laws, including but not limited to the due process clause of the Fourteenth Amendment and contract laws, such conspiratorial acts being borne of racial animus and because of Plaintiff Al-Asbahi's religion, Islam, and/or his Arab/Middle Eastern ethnicity, culture or descent.

91.     Each Individual Defendant has acted pursuant to motivation characterized by evil motive or intent or reckless and callous indifference to the federally protected rights of Plaintiff Al-Asbahi.

92.     As a direct and proximate cause of the violation, Plaintiff Al-Asbahi has been injured in his person and property, suffering pecuniary damaged of lost compensation, lost tuition paid, injury to professional reputation, mental and emotional distress or otherwise in an amount to be determined at trial.

93.     Additionally, Plaintiff Al-Asbahi prays that punitive damages are awarded to him because the Individual Defendants' actions were motivated by evil motive or intent, or reckless and callous indifference to his federally protected rights.

**COUNT V - BREACH OF CONTRACT**

94.     Plaintiff Al-Asbahi repeats and re-alleges paragraphs 1-91, above, and incorporates same as if fully set forth herein.

95.     Plaintiff's contract with Defendant SOP and Defendant Board of Governors included the Policy as a material provision.

96.     In breach of the contract and Policy, Defendant SOP and Defendant Board of Governors denied Plaintiff Al-Asbahi's requests made in writing on May 28, 2015, and July 20, 2015,

respectively, to appeal his failing grade in Defendant Martello's Acute Care Rotation to the Committee for a hearing as authorized by Chapter 1, Section 6.2 of the Policy.

97.     Defendant SOP's and Defendant Board of Governors' breach of contract predictably and foreseeably caused damage to Plaintiff Al-Asbahi by sustaining his failing grade in Defendant Martello's Acute Care Rotation and causing his dismissal from the Program, leading to lost tuition expenses and compensation in an amount to be determined at trial.  On information and belief, if the Committee had permitted Plaintiff an appeal hearing as required by the contract, his failing grade would have turned into a passing grade and Plaintiff would not have been dismissed from the Program.  He would have graduated and received a Doctor of Pharmacy Degree.

## COUNT VI - BREACH OF CONTRACT

98.      Plaintiff Al-Asbahi repeats and re-alleges paragraphs 1-91 above, and incorporates same as if fully set forth herein.

99.     Plaintiff Al-Asbahi's contract with Defendant SOP and Defendant Board of Governors for admission to the Program included the Policy as a material provision.

100.    Chapter 1, Section 1.3 of the Policy promised that Plaintiff would be "graded or have his/her performance evaluated solely according to performance in the didactic and experiential course as measured against academic and professional standards.  The student shall not be evaluated prejudicially, capriciously, or arbitrarily.  The student shall not be graded nor shall his/her performance be unlawfully evaluated on the basis of his/her race, color, religion, creed, disability, sex, sexual orientation, national origin, language, ancestry, veterans status, or political affiliation."

101.    In violation of Section 1.3, Plaintiff Al-Asbahi received a failing grade in Defendant Martello's Summer 2014 Acute Care Rotation that was not measured solely against academic

and professional standards but was prejudicial, capricious, or arbitrary to, among other things; retaliate against Plaintiff for successfully appealing his failing grade from Defendant Lowther and dismissal from the Program to Dr. Butcher.   The failing grade from Defendant Martello was also motivated in substantial part because of Plaintiff's race, religion and Arab/Middle Eastern ethnicity or descent.

102.    Defendant SOP's and Defendant Board of Governors' breach of contract under Section 1.3 predictably and foreseeably caused damage to Plaintiff Al-Asbahi by sustaining his failing grade in Defendant Martello's Acute Care Rotation and causing his dismissal from the Program, leading to lost tuition expenses and compensation and injury to professional reputation in an amount to be determined at trial.  If Defendant Martello and co-Defendants had complied with Section 1.3, Plaintiff would have passed Dr. Martello's Acute Care Rotation and would have remained in the Program.

## COUNT VII-PROMISSORY ESTOPPEL

103.    Plaintiff repeats and re-alleges paragraphs 1-100, above, and incorporates same as if fully set forth herein.

104.    Defendants made clear and unambiguous promises to honor and abide by the substantive and procedural requirements set forth in the Policy and the regulations, standards, procedures and policies governing the SOP set forth therein or otherwise.

105.    Plaintiff relied on Defendants' promises to honor and abide by the substantive and procedural requirements set forth in the Policy, along with the regulations, standards, procedures and policies set forth therein or otherwise by enrolling in the SOP, paying his tuition to attend the SOP, continuing to enroll and attend the SOP for the preceding three (3) years prior to Plaintiff's dismissal, and by conforming his personal and academic behavior to the standards of the SOP as

set forth in the Policy or otherwise and by participation in the processes mandated by the SOP, the Policy, the regulations, standards, procedures and policies set forth therein or otherwise provided for grading standards and grade disputes.

106.    Plaintiff's reliance was reasonable and foreseeable based on the nature of the promises themselves, the history and high academic reputation and prestige of the University of West Virginia, by the efforts of the Board or Governors in general and the SOP in particular, along with the public knowledge of the processes and the intended and supposed protections afforded SOP students, including Plaintiff, by the Policy.

107.    Plaintiff justifiably relied on the SOP and the Policy and the express and implied promises of the Defendants to his detriment, as each failed to adhere to the regulations, standards, procedures and policies set forth in the Policy and otherwise and did in fact discriminate against him and fail to treat him fairly, justly and lawfully and to provide him his rights set forth in the Policy or otherwise due him.

108.    As direct and proximate foreseeable consequence of the SOP and the co-Defendants' failure to abide by its promises, Plaintiff Al-Asbahi has suffered significant damages, including but not limited to the following:

   a.      Plaintiff Al-Asbahi suffers from an academic and disciplinary record that improperly and unlawfully includes a notation of a failing grade;

   b.      Plaintiff Al-Asbahi suffers from an academic and disciplinary record that improperly and unlawfully includes a notation of dismissal from the Program;

   c.      Plaintiff Al-Asbahi suffers from the inability to transfer or enroll in an academic institution of similar or equal prestige to West Virginia University School of Pharmacy because of the wrongful and breaching acts of Defendants;

d.      Plaintiff Al-Asbahi suffers from the inability to transfer or enroll in an academic institution of similar or equal prestige to West Virginia University because of the refusal of Defendants to provide to Plaintiff the promised academic and disciplinary review of his failing grade with Defendant Martello;

e.      Plaintiff Al-Asbahi has suffered monetary damages, emotional distress, loss of educational opportunities, loss of income opportunities and other direct and consequential damages;

f.      Plaintiff Al-Asbahi has lost any and all monies he has paid to the University of West Virginia and the SOP for tuition, books, fees, room, board, transportation and other costs and expenses incurred because he has been forced to leave the SOP prior to graduation and receipt of his diploma and ultimately his license to practice as a pharmacist and Doctor of Pharmacy.

**RELIEF REQUESTED**

Wherefore, Plaintiff requests the following relief singly and collectively against Defendants:

a.      A declaratory judgment that Defendants have violated Plaintiff's substantive due process rights;

b.      A declaratory judgment that Defendants have violated Plaintiff's procedural due process rights;

c.      A declaratory judgment that Defendants have violated Plaintiff's rights under 42 U.S.C. 1981 and 1985(3);

d.      An injunction requiring Defendants to permit Plaintiff to appeal his failing grade in his Summer 2014 Acute Care Rotation with Defendant Martello to the Committee for a hearing;

e.      An injunction against the SOP and the Board of Governors reinstating Plaintiff as a student at the SOP and changing Plaintiff's failing grade in the 2014 Acute Care Rotation to passing;

f.      Compensatory and punitive damages for violation of Plaintiff's procedural due process rights and rights under 42 U.S.C. 1981 and 1985 (3) in an amount to be determined at trial;

g.      Damages for breach of contract and promissory estoppel; Mandate that Defendants correct Plaintiff Al-Asbahi's academic and/or disciplinary record to remove any failing or incomplete grades, marks or notations;

h.      Mandate that Defendants immediately permit Plaintiff Al-Asbahi to reenroll in the SOP and reinstate him in full as a student in good standing therein to permit him to complete his senior /final year in the SOP;

i.      Attorney fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. 1988 , costs, prejudgment interest, and such other relief that this Court finds just and equitable.

**JURY TRIAL**

Plaintiff requests a jury trial on any and all such causes eligible for jury trial.

Respectfully submitted,

/s/ Edmund L. Wagoner
Edmund L. Wagoner (WVSB #10605)
David E. Goddard (WVSB #8090)
Goddard & Wagoner PLLC
333 East Main Street
Clarksburg, WV  26301
Tel:  (304) 933-1411
Fax:  (855) 329-1411


*s/ Bruce E. Fein, pro hac vice pending*
Bruce Fein, Esquire
*s/ W. Bruce DelValle, pro hac vice pending*
W. Bruce DelValle, Esquire
Fein & DelValle PLLC
*Pro Hac Vice Application Pending*
300 New Jersey Avenue, Suite 900
Washington, D.C. 20001
(office) 202-465-8727
*Email:*  bruce@feinpoints.com
             DelValle@FeinDelValle.com

**Attorneys for Plaintiff Basil Al-Asbahi.**